IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADVANCED AEROFOILTECHNOLOGIES, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 11-cv-7866 |
| THOMAS TODARO, et al., | ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Plaintiffs' Motion for a Temporary Restraining Order [3] and (2) Defendants' Motion to Dismiss [8]. On November 4, 2011, Plaintiffs Advanced Aerofoil Technologies, AG ("AAT AG"), Advanced Aerofoil Technologies, Inc. ("AAT Inc.") and Advanced Aerofoil Technologies, GmbH ("AAT Germany"), (collectively "AAT"), filed a five count complaint against Defendants Thomas Todaro, Anthony Chalder, Mark Tarby, Charles Byrd, Daniel Abbasi, Herve Flutto, Peter Konrad, Advanced Engineering Technologies, and Flowcastings, LLC, alleging violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*, the Illinois Trade Secret Act, ("ITSA"), 765 ILCS 1065/1, *et seq.*, conversion, and tortious interference with contract and with prospective economic advantage. Plaintiffs seek injunctive relief, restitution, and compensatory and punitive damages. On November 10, 2011, Plaintiffs also filed an emergency motion for a temporary restraining order ("TRO"). In their motion for a TRO, Plaintiffs focus principally on the CFAA and ITSA claims.

On November 15, 2011, Defendants filed a motion to dismiss [8] pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), principally arguing that (1) the Court lacks personal jurisdiction over the Defendants and (2) an existing settlement agreement between the parties prevents Plaintiffs

1

from seeking judicial relief in any event. On November 16, 2011, the Court conducted an initial hearing on Plaintiffs' request for a TRO. The Court then set a briefing schedule on the respective motions and set the matter for further hearing. On November 22, 2011, the Court held a second hearing during which Plaintiffs elicited testimony from a live witness, Robert Seth Armstrong,[1] and both counsel presented their arguments on the pending motions. On November 24, 2011, Plaintiffs filed a motion for leave to supplement the record [25] with additional materials and affidavits. Finally, on November 28, 2011, both parties submitted additional briefing [26, 27] addressing certain issues that arose during the November 22 hearing, including the amount of any bond that the Court would set in the event that it entered the requested TRO.

Having considered the relevant legal standards governing the TRO and the motion to dismiss, as well as Plaintiffs' and Defendants' motions, memoranda, and supporting materials, the arguments of counsel and the testimony presented at the November 22, 2011 hearing, the Court grants Defendants' motion to dismiss [8] and denies Plaintiffs' motion for a TRO [3]. Given the dismissal on jurisdictional grounds, the denial of the TRO obviously is without prejudice to Plaintiffs seeking injunctive relief in a court of competent jurisdiction – for example, in connection with any arbitration proceeding that may be commenced (see discussion at 13-14, *infra*).

## I.     Background[2]

AAT AG, a Swiss Company, is a worldwide provider of precision investment castings for power generation and transportation industries. AAT AG is a parent company with branches in Germany (AAT GmbH) and in the United States (AAT Inc.). Plaintiffs explained that AAT

---

[1] Robert Seth Armstrong is the current Director at AAT, Inc.

[2] In its assessment of the motion to dismiss, the Court takes the facts in the light most favorable to the Plaintiff. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Germany and AAT Inc. share all information and resources as sister-companies. AAT Inc. is a Delaware Corporation that has its primary office at 20 North Wacker Drive, Suite 3720, Chicago, Illinois. It appears to have a single employee, Mr. Armstrong, who testified that he has worked at AAT, Inc. since March 2011. The individual Defendants are former employees of (or consultants to) Plaintiffs, who worked in senior management for AAT Germany. While Defendants were physically present in Germany for all of their substantive work, they were compensated for their employment, reimbursed for expenses, filed tax returns and received health coverage from AAT Inc., and paperwork regarding their employment was sent to or from the Chicago office. Plaintiffs also contend that Defendant Todaro attended at least one meeting with one of AAT's customers, Abrasive Form, in Illinois during 2010.[3] Defendant Abbasi admits that he traveled to Illinois for an interview with AAT Inc. Plaintiffs also point to alleged business transacted by and meetings attended by Defendants Chalder, Tarby, Byrd, and Abbasi involving "customers" or a "client" of AAT, but provide no details whatsoever as to those contacts. Apart from these contacts, Plaintiffs have not alleged any other specific interaction between any of the individual Defendants and the State of Illinois. Defendants Advanced Engineering Technologies and Flowcastings, LLC[4] are companies created by some of the

---

[3] Based on the briefing and the testimony at the November 22 hearing, it was the Court's understanding that the meeting to which Plaintiffs point took place late in 2010. However, in their motion for leave to supplement the record [25], Plaintiffs cite (1) a June 2010 e-mail from an Abrasive Form employee to Todaro and others thanking them for dinner and their hospitality and (2) expense reports from August 2010 in which Todaro seeks reimbursement for a trip to DuPage County, Illinois. An affidavit from Harry Kaffenes, AAT Inc.'s former Chief Commercial Officer also attests to meetings in Illinois at which Todaro purportedly was in attendance during the last quarter of 2010. While the details of some of these meetings are unclear and disputed, what is clear is that all of the alleged contacts that Todaro had with Abrasive Form in Illinois took place in 2010.

[4] Defendant's claim that Flowcastings LLC does not exist but Flowcastings GmbH (a Germany company) does exist. It is irrelevant to the Court's analysis whether the company is a German or American company. Therefore the Court will refer to the entity as "Flowcastings."

individual Defendants, and according to Plaintiffs are in direct competition with AAT in the casting business.

Plaintiffs allege that at some point in the first quarter of 2011, Defendants Byrd and Flutto "hatched a plan to secretly set up a competing venture (Flowcastings, LLC), and pilfer valuable confidential, proprietary and trade secret information from Plaintiffs, while secretly undermining Plaintiffs' business by destroying vital records and negatively and falsely reporting on Plaintiffs' economic prospectus to other employees and customers." Pl. TRO at 5. According to Plaintiffs, Defendant Byrd hired Defendant Abbasi to be an outside fundraiser for AAT Germany. However, Byrd secretly instructed Abbasi to put on hold his fundraising efforts for AAT Germany and instead directed him to find investors for Flowcastings. Abbasi is now the President of Flowcastings.

After securing financing for Flowcastings, Flutto and Byrd are alleged to have left their positions at AAT AG and AAT Germany, after which time they purportedly began recruiting AAT employees during the first and second quarters of 2011. Plaintiffs also allege that before leaving, Flutto and Byrd accessed AAT Germany's servers and transferred confidential, proprietary and trade secret information. They also instructed new Flowcastings hires, at a time when they were still AAT Germany employees, to sabotage their AAT Germany computer files and data and destroy testing results before leaving their AAT positions. Flutto and Byrd then hired AAT Germany's Technical Director, Defendant Thomas Todaro, while he was still working at AAT Germany. Plaintiffs allege that Todaro, while he was still employed and compensated by AAT Inc., set out to sabotage AAT Germany's operations and intentionally sought to damage its customer relationships. Defendants also hired former AAT Germany employees Fabian Korb, Peter Konrad, Anthony Chalder, and Bernd Leonhardt.

4

On September 2, 2011, AAT AG and Defendants Todaro and Byrd signed a Confidential Termination Agreement ("Settlement Agreement"). In the Settlement Agreement the parties agreed to release each other from "any and all claims, liabilities, obligations, both known and unknown, that arise out of or in any way are related to events, acts, conduct, or omissions occurring at any time prior to and including the Settlement Agreement Date." Settlement Agreement, p. 2. The Settlement Agreement also included a covenant not to sue and provided that any dispute concerning the Agreement would be resolved by binding arbitration in Manhattan, New York, New York, in accordance with the laws of the State of New York. Settlement Agreement, p. 3-4. There is no indication in the record of any confidentially agreement or covenant not to compete between any of the Plaintiffs and any of the Defendants at any time relevant to this lawsuit.

On October 13, 2011, AAT Inc.'s Director Robert Seth Armstrong was inadvertently copied on an e-mail from Graham Durber, Marketing & Technical Manager, Europe of Western Australian Specialty Alloys, answering an e-mail sent by Defendant Herve Flutto, regarding the supply of alloy for Flowcastings. Attached to the e-mail was a power point presentation that included Flowcastings Management Team—all former members of AAT Germany's senior management. Plaintiffs allege that the technology discussed in the power point presentation is virtually identical to AAT Germany's confidential and proprietary technology—technology to which the former AAT Germany employees had unfettered and unlimited access. Three weeks after receiving the October 13 e-mail, Plaintiffs filed this suit.

## II. Analysis

Before the Court are Plaintiffs' motion for a TRO and Defendants' Motion to Dismiss. Because Defendants argue that Plaintiffs' complaint must be dismissed for lack of personal

jurisdiction and this Court only has the power to grant a TRO if it has personal jurisdiction, the Court begins by addressing Defendants' motion. See, *e.g.*, *American Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 880 (E.D. Wis. 2005) ("Because 'a restraining order or injunction is an in personam restraint issued against a party over whom the court has acquired jurisdiction,' '[i]f the court lacks personal jurisdiction over a party, it should not enter an injunction or restraining order against that party.'" (citing 13 James Wm. Moore et al., MOORE'S FED. PRACTICE § 65.61[1] (3d ed. 2005)).

### A. Defendants' Motion to Dismiss

Defendants argue that Plaintiffs' claims must be dismissed for lack of personal jurisdiction. In the alternative, Defendants argue that even if this Court has personal jurisdiction, Plaintiffs' claims must be dismissed because the Settlement Agreement between the parties instructs that arbitration in New York—not a judicial action in Illinois—constitutes the proper forum and venue for Plaintiffs' claims.

#### 1. Personal Jurisdiction

The Court must dismiss an action against a party over whom the Court lacks personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The Court may consider affidavits and other documents outside the pleadings in reaching its decision. See *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts, *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984), unless proved otherwise by the non-movants' affidavits or exhibits. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th

Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).

Where no federal statute authorizes nationwide service of process, the law of the forum state governs personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(a). A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution. Because the Illinois long-arm statute is coextensive with federal due process requirements, the two-step inquiry collapses into one—whether the exercise of personal jurisdiction over the defendants comports with constitutional due process. *Trading Technologies Inter. Inc. v. BCG Partners, Inc.*, 2011 WL 1220013, *2 (N.D. Ill. Mar 28, 2001); see also *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Court must determine whether Defendants have sufficient "minimum contacts" with Illinois such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Put another way, "each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being hauled into court' there." *Tamburo*, 601 F.3d at 701 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Under the "minimum contacts" test, a defendant may be subject to either general or specific jurisdiction. *Id.* For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. See *Helicopteros Nacionales de Colimbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. Here, Plaintiffs have not argued—either in their briefs or their oral argument—that Defendants have enough contacts with Illinois to satisfy the high threshold required to

7

established general jurisdiction. Accordingly, the Court turns its attention to specific jurisdiction.

The Seventh Circuit instructs that specific jurisdiction is appropriate where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 701 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316). Thus, the Court turns to the complaint, affidavits, counter-affidavits, and testimony to determine whether Plaintiffs have carried their burden.

In their briefs and at the November 22 hearing Plaintiffs summarized Defendants' "contacts" with the State of Illinois as follows:

- Todaro, Chalder and Tarby were W-2 employees of AAT, Inc -- a Company headquartered in Chicago, Illinois;

- Todaro, Chalder and Tarby participated in AAT Inc.'s 401(k) plan – administered by an Illinois corporation;

- Todaro, Chalder and Tarby participated in AAT Inc.'s healthcare plan – administered by United Healthcare for AAT, Inc., a Chicago corporation;

- Todaro, Chalder and Tarby submitted expense reports to AAT Inc. in Chicago, Illinois;

- Abbasi met with Plaintiffs' in Chicago, Illinois for a business meeting;

- Todaro, Chalder and Tarby carried out business in Illinois with a client of Plaintiffs;

- Byrd and Abbasi attended meetings in and around the Chicago area with AAT Shareholders, Board of Directors and customers;

- Todaro attended a meeting in DuPage County, Illinois in December 2010 with one of AAT's customers.

As an initial matter, the first four of these "contacts" are related to what could be broadly termed "human resource" matters; the AAT Inc. employee in Illinois who claims to have had contact with the Defendants testified that his relationship was day-to-day supervision of the Defendants' payroll, benefits, and expenses. Plaintiffs argue that the existence of the documents mentioned above prove that Defendants availed themselves of the privilege of conducting business in Illinois, and thus they could reasonably anticipate being haled into court there. But in *Protective Insurance Co. v. Cody*, 882 F. Supp. 782, 786 (S.D. Ind. 1995), the court—faced with similar employment related documents that the plaintiff argued availed the defendants of their out of state employers' forum—rejected a similar argument, resting its analysis chiefly on the principle that "only the defendant's conduct in relation to the forum state, not the unilateral actions of the plaintiff determines jurisdiction." *Id.* (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992)). The Court agrees with the reasoning and analysis set forth by Judge Barker in *Protective Insurance*. Defendants had no choice as to what accountant, insurance provider, or address Plaintiffs used for the processing of human resources related paperwork. Moreover, these four "contacts" have nothing to do with the alleged wrongful conduct—violations of the CFAA and ITSA and other state law business torts. Accordingly, they fail to support specific jurisdiction under the first and second prongs of the analysis.

Next, Plaintiffs argue that because Defendant Abbasi admits in his affidavit that he came to Illinois for an interview and meeting with Plaintiffs, he has availed himself of Illinois jurisdiction. But again, Plaintiffs have failed to link this "contact" with the claims set forth in the Complaint, and thus it, too, falls short under the second prong of the test set forth in *International Shoe* and applied by the Seventh Circuit in *Tamburo*. Similarly, Plaintiffs have not linked any business conducted by Todaro, Chalder and Tarby with AAT customers in Illinois or

any meetings Byrd and Abbasi attended in the Chicago area with AAT Shareholders, Board of Directors or customers to the injuries alleged in the Complaint and have provided no details or facts related to these alleged contacts.

Finally, Plaintiffs have argued—both in their briefs and at the November 22 hearing—that they have evidence of at least one meeting that took place in Illinois involving Defendant Todaro and an AAT customer, Abrasive Form, Inc. Plaintiffs submit that the meeting satisfies the specific jurisdiction test. Defendants respond that this "contact" has nothing to do with the alleged offenses.

The evidence of the purported meeting in Illinois involving Todaro and Abrasive Form was discussed at length during the November 22 hearing. To begin with, Mr. Armstrong clarified that Abrasive Form is not an end-user customer of AAT Inc's; rather, Abrasive Form performs a service (grinding) that is incorporated into AAT Inc.'s product before the product is sold to the ultimate consumer. Second, Mr. Armstrong acknowledged that he was not present at the meeting and that the e-mail on which his testimony was based confirmed only that a meeting was planned. Thus, Armstrong was not in position to confirm that the meeting occurred or that any of the Defendants attended the meeting. Third, Armstrong's testimony was based in part on what a customer told him – that the meeting in fact did take place – which elicited a hearsay objection from Defendants. Since the hearing, Plaintiffs have submitted supplemental materials, including the affidavit of former AAT employee Kaffenes in which Kaffenes attests that he personally attended meetings in the last quarter of 2010 at which Todaro and representatives from Abrasive Form also were present.

In considering Plaintiffs' evidentiary materials, the Court is cognizant that Defendants have not had an opportunity to cross-examine affiant Kaffenes and likewise is mindful of the

10

hearsay on which some of Armstrong's testimony rests. Recognizing, however, that "the Rules of Evidence do not apply, or at least not with full vigor, in a preliminary injunction hearing" (*Jackson v. N-Genuity Enterprises Co.*, 2011 WL 4628683, at *23 (N.D. Ill. Oct. 3, 2011)[5] – and, thus *a fortiori*, at the TRO stage – the Court will consider both Kaffenes' and Armstrong's testimony concerning Todaro's alleged contacts with Abrasive Form. Nevertheless, the Court concludes that Plaintiffs have not satisfied the specific jurisdiction test – even as to Todaro.

In their effort to link Defendants' Illinois contacts to the alleged wrongdoing set forth in the Complaint, at most Defendants can point to a meeting that occurred no later than the fourth quarter of 2010 involving one Defendant (Todaro) and one Illinois customer (Abrasive Form, which in fact is Plaintiffs' only Illinois customer). But the Seventh Circuit has held that "specific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather the *action* must *directly arise* out of the *specific contact* between the *defendant* and the *forum state*." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (emphasis added). Here, Plaintiffs assert claims under the CFAA, the ITSA, and other state law causes of action, which according to their own complaint and briefs arise out of conduct that commenced in 2011. Many of the allegations reference either the first or second quarter of 2011 (see, *e.g.*, ¶¶ 28, 33); others focus more specifically on dates in that time frame – for example, as early as June 2011 (see ¶ 37). Moreover, it is undisputed that each of the Defendants was based in AAT's Germany office.

To be sure, Plaintiffs are correct that, assuming the allegations to be true, some effects of Defendants' wrongful conduct would be felt in Illinois. While that may be pertinent to the

---

[5] See also *Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010)("And even if Dexia's evidence was inadmissible under the Federal Rules of Evidence, we have recognized that a district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits").

purposeful availment prong of the specific jurisdiction test (see *RAR*, 107 F.3d at 1277), it cannot overcome the absence of any link between the alleged meeting that took place in 2010 and the alleged wrongful conduct that took place in 2011. According to the Complaint, at the time of the alleged meeting, Todaro (and other Defendants) were employed by AAT entities and presumably performing their duties without issue, given the absence of any allegations to the contrary. Allowing Plaintiffs to hang their hat on a meeting that is presumed to have taken place in 2010 (and thus prior to any alleged wrongdoing set forth in the Complaint) is exactly the kind of "loose causal connection" between the suit and a defendant's forum contacts that the Seventh Circuit has made clear does not comport with the fair play and substantial justice components of the specific jurisdiction analysis. *Id.* at 1278. Again, by analogy to *RAR*, even if Plaintiffs' suit "is, in certain sense, related to [Todaro's] contacts with Illinois," if only because Todaro may not have come to deal with Abrasive Form at all had he not been employed by Plaintiffs, the connection between the 2010 meeting in Illinois and the alleged 2011 wrongdoing is too tenuous to satisfy the test. *Id.*[6] If Plaintiff's theory were correct, any employee who engaged in legitimate contacts with customers in multiple states could be haled into court in any of those states at a later date if the employer-employee relationship soured and litigation ensued. But the law requires more – specifically, a direct causal connection between the plaintiff's action and the defendant's contacts with the forum state. Here, Plaintiffs have failed to meet their burden of demonstrating that their alleged injuries arise out of Defendants' Illinois activities.

Although the shortfall identified above is enough to require dismissal, in the interest of completeness the Court adds that Plaintiffs also have failed to show that, under the third prong of

---

[6] If, for example, the evidence showed that Todaro met with Abrasive Form in Illinois *after* he and the other Defendants put into motion their alleged plot to shift loyalties from AAT to Flowcastings, then Plaintiffs would be in a very different (and much stronger) posture as to prong two.

*International Shoe,* bringing the Defendants into this Court would be consistent with traditional notions of fair play and substantial justice. To make this determination, the Court considers the following factors: (1) the burden to the defendants; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiffs' interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

Applying those factors, the Court first notes that this lawsuit would impose a significant burden on Defendants if it were to proceed in this jurisdiction. It would require one out of state corporation, four foreign corporations, four individual residents of the Northeast United States, and five residents of Germany and Switzerland, to litigate complex issues away from their home, place of business, and the site of most, if not all of the alleged wrongdoing. It also is unclear what interest, if any, Illinois has in adjudicating this dispute. Plaintiffs' only ties to the jurisdiction are a single customer that performs a service that is integrated into Plaintiffs' product and an office with a single employee who largely performs human resources functions.[7]

Finally, and perhaps most significantly, Plaintiffs have failed to explain—either in their briefs or at the November 22 hearing—why New York, the agreed upon arbitration forum, is not a more appropriate forum for this action from the perspective of both the parties' and the judicial system's interests. As discussed in greater detail below, given the express linkage in the Settlement Agreement between (1) a New York-based arbitration as the preferred method of dispute resolution and (2) the possible use of court proceedings for injunctive relief to prevent irreparable harm "pending the conclusion of any such arbitration," the filing of a complaint in

---

[7] AAT Inc. is incorporated in Delaware. It claims Illinois as its principal place of business. It appears from the record to date that its business in Illinois has been carried out primarily by Mr. Armstrong, who has been with the company since March 2011.

13

New York, if necessary, would seem to best advance the "judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477; see also *RAR*, 107 F.3d at 1280 (explaining that "[t]he consequence of our holding" that specific jurisdiction was lacking over foreign defendant in breach of contract dispute was "mitigated by the fact that personal jurisdiction is waivable and that parties can, through forum selection clauses and the like, easily contract around any rule we promulgate"). The parties' agreement that New York law would govern any disputes arising out of the Agreement points in the same direction. And the entire New York-centric view reflected in the Agreement certainly suggests that Plaintiffs believed that their "interests in obtaining convenient and effective relief" would be accommodated in a New York forum. In sum, considering all of the *Burger King* factors and most specifically the location of nearly all of the parties and the agreed upon arbitration location, allowing Plaintiffs' claims to proceed in this forum would offend traditional notions of fair play and substantial justice under *International Shoe*.

For all of the reasons explained above, the Court concludes that Plaintiffs have not established a basis for the Court to assert personal jurisdiction over the Defendants. None of the alleged injuries in Plaintiffs' complaint arise out of Defendants' Illinois activities, and haling Defendants into an Illinois court would offend traditional notions of fair play and substantial justice.

### 2. Settlement Agreement and Arbitration Clause

Defendants also argue that even if the Court has personal jurisdiction of the Defendants, the Court would still be obliged to dismiss the complaint in light of the parties' Settlement Agreement.

The relevant section of the Settlement Agreement (page 4) reads:

> This agreement shall be governed by and construed in accordance with the laws of the State of New York . . .
>
> . . .
>
> Any dispute concerning this Agreement shall be resolved by binding arbitration before a single arbitrator of the American Arbitration Association ("AAA") under the rules of the AAA . . . The arbitration shall be held in the Borough of Manhattan in the City of New York. Nothing in this agreement is intended to prevent any party from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of such arbitration.

Under the Federal Arbitration Act, 9 U.S.C. § 2 *et. seq.*, a written agreement to arbitrate disputes that arise out of a contract shall be valid, irrevocable, and enforceable. Moreover, there is a strong federal interest in enforcing arbitration agreements. *Allied-Bruce Terminix Co. Inc. v. Dobson*, 513 U.S. 265, 270 (1995).

Plaintiffs argue that the Settlement Agreement does not prohibit the claims before the Court from going forward because not all of the parties were signatories to the Settlement Agreement. According to Plaintiffs, only one Plaintiff (AAT AG) and two individual Defendants were parties to the Settlement Agreement. But, as Defendants point out, the first paragraph of the agreement clearly states that "AAT" refers to all three Plaintiffs, AAT AG, AAT, Inc. and AAT GmbH. Furthermore, while it is true that Todaro and Byrd[8] were the only Defendant signatories to the agreement, the release clause includes each of the signatories and their:

> Members, partners, owners, directors, officers, employees, shareholders, trustees, fiduciaries, administrations, agents, attorneys, predecessors, successors, parents and subsidiary entities, insurers, affiliates, and assigns . . . from any and all claims, liabilities and obligations, both known and unknown, that arise out of or are in any way related to events, acts, conduct, or omissions occurring at any time prior to and including the Agreement Date.

Under such broad language, all of the Defendants at least arguably are covered by the release

---

[8] Todaro and Byrd signed on behalf of Advanced Engineering Technologies.

clause of the Settlement Agreement.

Moreover, third-party beneficiaries are estopped from denying their obligation to arbitrate when they receive a direct benefit from a contract containing an arbitration clause, *and* non-signatories to an arbitration agreement may enforce the agreement's arbitration provisions in certain circumstances under the doctrine of equitable estoppel. *Leff v. Deutsche Bank AG*, 2009 WL 1380819, *4-5 (N.D. Ill. May 14, 2009); *Choctaw Generation Limited Partnership v. American Home Assurance Co.*, 271 F.3d 403, 404 (2nd Cir. 2001) (non-signatories to an arbitration agreement can compel a signatory to arbitrate its claims against the non-signatory under an estoppel theory "when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the stopped party has signed.") In this case, some, if not all of the claims that Plaintiffs assert are intertwined with the issues addressed in the Settlement Agreement. Accordingly, the provisions of the Settlement Agreement, including the Arbitration Clause, may very well bind all of the parties.

Next, Plaintiffs argue that because there is an express "carve out" provision preserving the right to go to court for an injunction, their claims can go forward in this Court. Plaintiffs, however, ignore the second half of the sentence of the arbitration clause, which reads: "Nothing in this agreement is intended to prevent any party from obtaining injunctive relief in court to prevent irreparable harm *pending the conclusion of such arbitration*." Thus, while Plaintiffs are correct that there is a "carve out" for an injunction proceeding, the parties' agreement contemplates that such an action would be brought only to prevent irreparable harm "pending the conclusion of" an arbitration. The logic of the provision plainly indicates that in order to seek an injunction, Plaintiffs must first raise their claims in the agreed upon arbitration forum and may turn to the courts only if necessary to prevent irreparable harm while the arbitration is

16

proceeding. There is nothing in the record to indicate that Plaintiffs have taken any steps to commence an arbitration; hence, the issue of an injunction would not appear to be ripe at this time.

Finally, as noted above, the Settlement Agreement incorporates the parties' agreement to use New York as their forum for arbitration and their designation of New York law to govern their claims. Given that (1) any injunction proceeding must be tied to pending arbitration and (2) the parties have already agreed to New York as the forum for such arbitration, it makes sense for any court proceedings to take place in the same forum as the arbitration. See *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 979 (2nd Cir. 1996) ("When a party agrees to arbitrate in a state, where the Federal Arbitration Act makes such agreements specifically enforceable, that party must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in that state. To hold otherwise would be to render the arbitration clause a nullity.") (internal citations omitted). Finally, the Court notes that the selection of New York as a forum makes sense in view of the location of so many of the parties in Europe and the Northeastern United States.

In sum, even if the Court had personal jurisdiction – which it does not – Plaintiffs' claims would be subject to dismissal without prejudice under the terms of the Settlement Agreement.[9]

### B. Plaintiffs' Motion for a Temporary Restraining Order

Because the Court grants Defendants' motion to dismiss for lack of jurisdiction, Plaintiffs' motion for a TRO is denied. The denial, of course, is without prejudice.

---

[9] Plaintiffs raise other questions about the scope the Arbitration Agreement, fraudulent inducement, and the ability of non-signatories to invoke arbitration. To the extent that the arbitrator is not empowered to address all of these questions, the parties may seek to raise them in a court of competent jurisdiction.

17

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to file supplemental record [25] is granted, Defendants' motion to dismiss for lack of personal jurisdiction [8] is granted, and Plaintiffs' motion for a temporary restraining order [3] is denied. The Court offers no opinion on the likelihood of success on the merits or any of the other TRO factors.

Dated: November 30, 2011

_____
Robert M. Dow, Jr.
United States District Judge